IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION

| | |
|---|---|
| BLONDELLE C. GADSDEN, )<br>)<br>Plaintiff, )<br>)<br>vs. )<br>)<br>CHARLESTON COUNTY SCHOOL )<br>DISTRICT, )<br>)<br>Defendant. )<br>) | CIVIL ACTION NO.: 2:17-cv-01355-RMG-MGB<br><br>**COMPLAINT**<br>(Jury Trial Requested) |

Comes now the Plaintiff, Blondelle C. Gadsden, by and through undersigned counsel, alleges and says unto this Honorable Court the following:

**PARTIES**

1. Plaintiff, an African-American female, is a resident of and domicile in the County of Charleston, State of South Carolina.

2. The Defendant, the Charleston County School District (hereinafter referred to as the "District"), is a political subdivision of the State of South Carolina located in Charleston County, South Carolina.

3. Lynda Davis, (hereinafter referred to as "Davis"), at all times relevant herein, was employed by the Defendant, Charleston County School District, as the Interim Associate Superintendent.

4. Louis J. Martin, Jr., (hereinafter referred to as "Martin"), at all times relevant herein, was employed by the Defendant, Charleston County School District, as the Associate Superintendent.

1

5. Gerrita Postlewait, (hereinafter referred to as "Postlewait"), at all times relevant herein, was and/or is the current Superintendent for the District.

6. The Defendant, Charleston County School District, is vested with the authority to supervise administrators, teachers, principals, and assistant principals, including the hiring, firing, and termination of teachers, principals, assistant principals, and/or administrators.

7. At all times relevant herein, Postlewait, Davis, and Martin were acting within the cause and scope of their employment in that they were servants and/or agents of the Defendant. Further, at all times relevant herein, the Defendant, the District, received federal funds for the purpose of supplementing and/or assisting in its pursuit to educate students in Charleston County. One of the primary purposes of receiving the federal funds was to provide employment to administrators. For example, the School District received federal funds under the School Improvement Grant (SIG) to hire additional administrators at and for alleged at-risk schools.

## JURISDICTION AND VENUE

8. Jurisdiction of this Court is invoked pursuant to 28 USC 1331 and 1343, *et seq.*, 42 USCA 2000 *et seq*.

9. Compensatory and punitive damages are sought pursuant to the 1991 Civil Rights Act, *et seq*. as amended, as well as the 1964 Civil Rights Act; Title VI of the 1964 Civil Rights Act, Section 603; 42 USC 2000; Title VII of the 1964 Civil Rights Acts, Section 704(a), et seq. and Section 703(a) et seq. of the said act.

10. The Plaintiff filed and has presently pending before this Court, an action against the Defendant in this action. In the action pending before the Court, namely, _Blondelle C. Gadsden v. Charleston County School District, et al., Civil Action No. 2:16-03091-RMG-MGB_,

the Plaintiff alleges violation of her rights under 42 USCA 1983, 42 USCA 1981 and 42 USCA 1982, the Fourteenth Amendment of the United States Constitution in addition to being retaliated against for the exercise of her constitutional protective rights as well as the Equal Protection Clause of the United States Constitution.

11. The factual operatives of the Plaintiff's pending case and this action are intertwined to the extent that they are almost congruent. The Plaintiff was mandated by statute and case law to exhaust her administrative remedies under Title VII before she could initiate this action in this Court. In that connection, the Plaintiff received and is attached hereto as **Exhibit 1**, a Notice of Right to Sue letter from the South Carolina Human Affairs Commission and or the Equal Employment Opportunity Commission. At the risk of being verbose, the repeated allegations in this action are almost identical to the allegations in her pending action. In this action, Plaintiff is also asserting that the Defendant, by way of intentional discrimination, violated Title VI of the 1964 Civil Rights Act, in that the Defendant received or is receiving federal funds for employment of personnel and otherwise.

12. Furthermore, the Plaintiff seeks attorney's fees for the bringing of this action pursuant to the 1976 Civil Rights Attorney's Fees Act as well as injunctive relief where appropriate.

## FACTS

13. Plaintiff graduated, *cum laude,* from Benedict College in 1982 with a Bachelor's of Science Degree in Secondary Mathematics Education. Subsequent thereto, in 1998, Plaintiff graduated, *cum laude*, with a Master's Degree from the Citadel in Secondary School Administration.

14. Plaintiff was initially employed by the Charleston County School District in July, 1993 as Teacher/Administrative Assistant. During that entire period of time, up until the point that she was demoted for the third time, Plaintiff received, when given, satisfactory, if not superior, evaluations from the appropriate school principal, supervisor, or District personnel.

15. In 1998, Plaintiff was promoted to Assistant Principal at Wando High School. Plaintiff served in that capacity until 2003.

16. In 2003, Plaintiff applied for the principalship at Stall High School but was passed over for a white male, notwithstanding the fact that the Constituent Board wanted Plaintiff to become the principal.

17. Beginning with the 2003-2004 school year, Plaintiff became the Interim Principal at Burke High School. Burke High School is a predominately black high school located on the peninsula in the City of Charleston, State of South Carolina. Subsequent to integration, Burke High School became the subject matter of numerous attempts to close the said school, takeover of the school by the Charleston County School Board or District and the South Carolina Department of Education; revamp the school, etc.

18. After becoming Interim Principal, Plaintiff began to speak up and out about certain intentional racial discriminatory practices that she observed the District engaging in as it related to Burke High School as oppose to other majority Caucasian schools, including, elementary, middle, and high schools.

19. Subsequent thereto, Plaintiff became the Assistant Principal at Burke High School in the 2004-2005 school year over the Ninth Grade Academy. The Plaintiff continued to complain about the discriminatory treatment of Burke High School in general, as well as the Ninth Grade Academy in particular, that was incurring from the District. Plaintiff complained to

4

her superior, supervisor and other District officials. Additionally, Plaintiff made her observations and complaints regarding race discrimination that Burke High School was receiving at the hands of the District, known to some parents of the almost exclusively black student population at the Ninth Grade Academy and Burke High School.

20. The Plaintiff asserts that the position of Dean of the Middle School/Assistant Principal of the Middle School/A Plus Academy was tantamount to being a principal, in that the Plaintiff performed all the duties that a principal would have performed in that capacity. Additionally, Plaintiff was evaluated as a Principal during her tenure at the Middle School.

21. From October 2005 through 2007, Plaintiff was deemed, *"Assistant Principal" at* the A plus Academy at Burke Middle School. During her entire tenure on the Burke High School campus, Plaintiff continuously complained to her supervisor, as well as community members, about the discriminatory treatment Burke was receiving from the District, as compared to other predominantly white schools.

22. The Plaintiff asserts that it was common knowledge that the District, although receiving federal funds, was engaging in a concerted effort to close Burke High School and disburse black students at Burke throughout the Charleston County School District. The public, as well as the Plaintiff, viewed this as tantamount to closing the only predominately black high school in the City of Charleston.

23. Because of these complaints, *inter alia,* Plaintiff was then assigned, during the 2007-2008 school year, as an Assistant Principal at Brentwood Middle School. At the time of her transfer to Brentwood Middle School, the school was slated to and did close in June of 2008.

24. Initially, in conjunction with being assigned to Brentwood Middle School as Assistant Principal, Plaintiff was told by the District that she would be allowed to apply for other

5

administrative positions in the District after the closure of Brentwood Middle School. That conversation occurred between the Plaintiff and a District official by the name of Randy Bynum.

25. At Brentwood Middle School, Plaintiff continued to complain about the discriminatory treatment that black students were receiving as oppose to their Caucasian counterpart in the Charleston County School District.

26. For instance, black students were approximately six (6) times significantly more likely to be expelled or given in-school suspension, out-of-school suspension, or disciplined more harshly than their white counterparts who committed the same offense as the black students.

27. Plaintiff also complained about the intentional racial discrimination being levied against Black students in the Twilight Program. That program was established in 2010 by the Defendant as a *"non-traditional education classroom setting"* for ninth through twelfth grades.

28. Since its inception, no less than seventy-three percent (73%) of the students referred to that program were black. Plaintiff asserted and complained that the Twilight Program was a dumping ground for black students.

29. During her entire tenure at the Charleston County School District, Plaintiff complained about the intentional racially discriminatory treatment that black students and/or black administrators were receiving at the hands of the District as compared to their white counterparts. These complaints were made to the Plaintiff's immediate supervisor, as well as members of the public.

30. At the beginning of the 2008-2009 school year, Plaintiff was demoted to a Hearing Officer and remained in that position for a period of eight (8) years.

31. The Defendants' agent and employee, Louis J. Martin, Jr. was the subordinate to Nancy McGinley, who was the Charleston County School District Superintendent when the Plaintiff was demoted from Assistant Principal to a Hearing Officer.

32. During that entire period of time, Plaintiff continued to complain about the disproportion and intentional racially motivated disciplinary actions or treatment that black students were receiving as oppose to their white counterparts.

33. For example, as a Hearing Officer, there is a certain protocol (a packet) that the District must follow before a disciplinary matter is referred to a Hearing Officer.

34. The Plaintiff repeatedly complained about the Packet for black students, who were the subject matter of a disciplinary hearing, not being properly completed. White students that had committed the same offense were not referred to the Office Student Placement and no packet was submitted. By way of example, black students were approximately six (6) times more likely to be referred for discipline and/or disciplined than white students for the same offense.

35. Further, black students are systematically excluded from gaining entrance in the better schools in the District. For example, for the 2016-2017 school year, the Academic Magnet High School, one of the best schools in the country, has a total of eighteen (18) black students out of a student population of Six Hundred Fifty-three (653).

36. In the 2016-2017 school year, Plaintiff was demoted to the extent that she was given a teacher's contract to teach at the Charleston County Alternative Elementary/Middle School at Liberty Hill Academy.

37. Plaintiff asserts that the demotion was a direct result of the Plaintiff complaining about the intentional racially discriminatory treatment that black students and/or black

administrators were receiving at the behest of the Defendant and/or its agents as oppose to their white counterparts.

38.     The Plaintiff further asserts that she complained to the District, in general, and Louis J. Martin, Jr., in particular, about demotions and/or intentional racially discriminatory treatment as it relates to black female Assistant Principals and Principals.

39.     The Plaintiff asserts that Louis J. Martin, Jr., Associate Superintendent, on numerous occasions, tried and did have black female Assistant Principals demoted; placed on a Professional Improvement Plan (PIP) when that was not necessary; and removed black female Assistant Principals from schools and replaced them with white Assistant Principals with less or no experience.

40.     Plaintiff continuously spoke out against the intentional racially discriminatory treatment against black Administrators, Assistant Principals, and Principals.  Black Principals, Assistant Principals, and Administrators are routinely demoted to teachers or counselors' positions while similarly situated white counterparts are not.  For example, for the 2016-2017 school year, out of five (5) principals demoted to teachers or otherwise, four (4) were black.

41.     The Defendant routinely, in a disparate manner, eliminated District level administrative positions occupied by black females.

42.     Plaintiff participated in the United States Department of Education Office of Civil Rights (OCR) investigation of the Charleston County School District that was initiated approximately in the 2014-2015 school year.

43.     After the investigation and for the 2016-2017 school year, Plaintiff was demoted to a teacher.  Plaintiff was then placed at a school, by the Defendant, that housed students whose rights the Plaintiff adjudicated when the Plaintiff was a Hearing Officer.  As a result of being

placed there, Plaintiff was accosted, verbally and threatened physically, by some of those students.  The Plaintiff's white counterpart was placed in a less threatening environment by the Defendant.

44. Plaintiff applied for the principalship at Burke High School for the 2016-2017 school year.  An interview panel was convened by the Defendant's agents and/or servants, Postlewait and Davis, *inter alia*, to interview the candidates for said principalship.

45. Subsequent to the interviews, the Plaintiff, along with another African-American female, were recommended to be hired as the Principal at Burke High School for the 2016-2017 school year.

46. The Defendant's agent and/or servant, Postlewait or Davis, who had the ultimate hiring authority, selected neither African-American best qualified candidates.  The said Defendant placed a Caucasian female, who had not applied, as the Principal at Burke High School for seven (7) months of the 2016-2017 school year.

47. Further, in July of 2016, the Defendant advertised, as vacant, the position of Hearing Officer.

48. Plaintiff asserts that she, at that time, had more than eight (8) years of experience as a Hearing Officer for the Defendant's District.  That position was never filled by the Defendant's agent and/or servant, Superintendent Postlewait.

## FOR A FIRST CAUSE OF ACTION
### (Race Discrimination)

49. The Plaintiff realleges each and every allegation set forth hereinabove as if repeated verbatim.

50. The Plaintiff alleges that the Defendant's conduct towards the Plaintiff, from the first time that the Plaintiff complained of race discrimination, was done solely because of the Plaintiff's race, in violation of Title VII of the 1964 Civil Rights Act, the 1991 Civil Rights Act and 42 USCA 1981, as amended.

51. The Plaintiff asserts that the Defendant's agents and/or servants, McGinley and Postlewait, together with the Charleston County School District, discriminated against her in regards to her rights; in failing to hire Plaintiff as a Principal for Burke High School for the 2016-2017 school year; and in failing to hire the Plaintiff as a Hearing Officer for the 2015-2016 school year.

As a result of being discriminated against because of her race, Plaintiff suffered damages, both punitive and actual, in an amount to be proven at trial.

## FOR A SECOND CAUSE OF ACTION
### (Retaliation)

52. The Plaintiff realleges and reincorporates each and every allegation hereinabove set forth.

53. The Plaintiff was retaliated against for by the Defendant for engaging in a protected activity, in that the Plaintiff participated in the investigation conducted by OCR and did not engage in conveying falsehood to the investigators for OCR as was directed by the Defendant. Plaintiff further asserts that there was a causal connection between not being selected as Principal at Burke High School and participating in the OCR investigation.

As a result of retaliation, Plaintiff suffered damages, both punitive and actual, in an amount to be proven at trial.

## FOR A THIRD CAUSE OF ACTION
### (Violation of Title VI of the 1964 Civil Rights Act)

54. The Plaintiff realleges and reincorporates each and every allegation hereinabove set forth.

55. Plaintiff asserts that the Defendant, by and through their conduct, policy, procedures, and customs, intentionally, discriminated against black students, predominantly black schools, and black administrators, all in violation of Section 602, *et seq.* of Title VI.

56. Plaintiff asserts that she is entitled to actual, consequential and compensatory damages, as well as reasonable attorney's fees and costs under the 1978 Civil Rights Attorney Fees Act and 42 USCA 1988.

## FOR A FOURTH CAUSE OF ACTION
### (Retaliation)
### (Violation of Title VI of the 1964 Civil Rights Act)

57. The Plaintiff realleges and reincorporates each and every allegation hereinabove set forth.

58. Plaintiff further asserts that in complaining about and/or objecting to the continuous discrimination against black employees, principals, assistant principals, and/or students by the District and/or its agents and servants, the District, through said agents and/or servants, retaliated against the Plaintiff causing the same actual and punitive damages in an amount to be proven at trial.

**WHEREFORE,** Plaintiff prays judgment against the Defendant as follows:

a. Compensatory damages;

b. Injunctive relief;

  c. Consequential damages;

  d. Punitive damages;

  e. Attorney's fees and costs under the 1988 Civil Rights Act; 42 USCA 1981; and 42 USCA 1983;

  f. And for such other relief as this Court may deem just, equitable and proper.

          BY: <u>s/Edward M. Brown, Esquire</u>
            EDWARD M. BROWN, ESQUIRE
            Attorney for the Plaintiff
            Federal I. D. No. 1510
            P. O. Box 20261
            Charleston, SC  29413
            (843) 559-9224
            (843) 559-9226 (Fax)

Charleston, South Carolina

Dated: <u>May 24, 2017</u>